CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LEON D. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:24-cv-00686 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DUSTIN CASEY, | ) | By:    Hon. Joel C. Hoppe |
| | ) |         United States Magistrate Judge |
| Defendant. | ) | |

Plaintiff Leon D. Mitchell, proceeding *pro se*, brings this civil-rights action under 42 U.S.C. § 1983 against Defendant Dustin Casey, alleging that, while Plaintiff was incarcerated at Keen Mountain Correctional Center, Defendant employed his canine unit in an excessively forceful manner in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (*See* ECF No. 1, at 3.) Now before the court is Defendant's motion for summary judgment (ECF No. 27). For the following reasons, Defendant's motion will be granted.

## I.

Plaintiff's claim stems from allegations[1] that, on March 31, 2024, at 8:24 p.m., while he was incarcerated at Keen Mountain Correctional Center, he had an altercation with another inmate in the B1 pod. (ECF No. 1, at 3.) Plaintiff alleges that, following the altercation, Defendant Casey utilized constitutionally excessive force against him by forcefully deploying

---

[1] Plaintiff's complaint was verified (*see* ECF No. 1, at 2) and therefore carries the same evidentiary weight as an affidavit for purposes of Defendant's summary-judgment motion. *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021).

his K-9 dog. (*Id.*) He further alleges the dog engaged Plaintiff on the right side of his torso and continued to bite and jerk him even though he was handcuffed and lying on the floor. (*Id.*) Plaintiff claims the encounter with the K-9 caused him physical, mental, and emotional scarring. (*Id.*)

Plaintiff avers that, before filing this suit, he exhausted all available administrative remedies. He states that the facility administration responded to his initial grievance that all policies were followed but that, on appeal, the Regional Ombudsman overturned the grievance decision on May 3, 2024. (*Id.*) Nevertheless, Plaintiff claims he was wronged and has not had any resolution. (*Id.*) He states that "[t]he facility still insist[s] [his] constitutional rights were not violated [and] all policies were followed, even after the regional ombudsman ruled otherwise." (*Id.*)

Defendant seeks summary judgment on the grounds that Plaintiff did not properly exhaust administrative remedies before filing this action and that no reasonable jury would find that Defendant violated Plaintiff's Eighth Amendment rights. (*See* ECF No. 28, at 8–15.) Because the court finds Defendant is entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies, the court need not reach—nor summarize the evidence relating to—the merits of Plaintiff's excessive-force claim.

In support of his exhaustion argument, Defendant offers an affidavit from Haley Hardin, the grievance coordinator at Keen Mountain Correctional Center (Aff. of H. Hardin [ECF No. 28-1, at 1–7]), as well as copies of the Offender Grievance Procedure set forth in Virginia Department of Corrections Operating Procedure 866.1 ("OP 866.1") (Aff. of H. Hardin, Encl. A [ECF No. 28-1, at 8–24]) and Plaintiff's written complaints and grievance

documents related to this case (Aff. of H. Hardin, Encl. B [ECF No. 28-1, at 25–30]; Aff. of H. Hardin, Encl. C [ECF No. 28-1, at 31]; Aff. of H. Hardin, Encl. D [ECF No. 28-1, at 32–36]). Defendant also offers a supplemental affidavit from former grievance coordinator K. Breeding with his reply brief. (*See* Aff. of K. Breeding [ECF No. 45-1, at 1–3].) Defendant's exhaustion evidence reveals the following.

OP 866.1 sets forth the procedure used to resolve inmate complaints, appeal administrative decisions, and challenge the substance of prison procedures. (*See* Aff. of H. Hardin ¶¶ 5−3 & Encl. A). All inmates are oriented to the Offender Grievance Procedure when they are received into the Virginia Department of Corrections and each time they are transferred to another facility. (*Id.* ¶ 14.)

Before he may submit a formal grievance, OP 866.1 requires an inmate to demonstrate that he has made a good-faith effort to informally resolve his complaint. (*Id.* ¶ 8.) He may do so by submitting a Written Complaint form to the grievance department within 15 days of the incident underlying the complaint or within 15 days of the discovery of the incident. (*Id.*) Prison staff are to provide a written response to the complaint within 15 days of its filing. (*Id.*) If the inmate is dissatisfied with the response or if 15 days have passed without a response to the Written Complaint, he can submit a Regular Grievance on the issue. (*Id.*) Regular Grievances must be submitted within 30 days of the underlying incident or discovery thereof. (*Id.* ¶ 7.) To effectively do so, he must attach the required documentation from his attempt to resolve the issue to the Regular Grievance. (*Id.* ¶ 8.)

A Regular Grievance that does not meet the filing requirements will be returned to the inmate within two business days of its receipt by the grievance department and will include

3

the reason for the rejection and instructions on how to correct and resubmit the form, where feasible. (*Id.* ¶ 10.) If the inmate desires a review of the intake decision, he may send the returned grievance form to the Regional Ombudsman. (*Id.*) Pursuing an intake appeal of a rejected grievance, alone, does not constitute complete administrative exhaustion but is merely a step toward exhaustion. (*Id.*)

Once a Regular Grievance is accepted for intake, there are two levels of review available. (*Id.* ¶ 11.) Level I reviews are performed by the Warden or Superintendent of the facility housing the inmate, and Level I responses are to be issued within 30 days. (*Id.*) An inmate who is not satisfied with the outcome of his Level I review may appeal that decision to Level II. (*Id.*) Level II reviews are conducted by either the Regional Administrator, the Health Services Director, the Chief of Operations for Classification and Records, or the Superintendent for Education, and those responses must be issued within 20 days. (*Id.*) Level II is the final level of appeal for most issues. (*Id.*) Grievances must be appealed through all levels of available review to satisfy the exhaustion requirement prior to filing suit. (*Id.* ¶ 12.)

Plaintiff has been housed at Keen Mountain Correctional Center since April 7, 2023. (Aff. of H. Hardin ¶ 4.) On April 3, 2024, Plaintiff filed a written complaint stating:

> [O]n 03/31/24 after getting into a physical altercation with another inmate, the K9 officer violated policy + my constitutional rights under federal law + caused me irreparable harm by throwing the dog on me after the fight was over. At no time did the dog man follow policy + advise me he was deploying the dog if I wouldn't stop fightin[g] but the fight was already over, w[h]ich makes his actions racist + against DOC policy. This was a one on one hand to hand fight + other force should have been used before the dog was deployed. The fight was over + the dog was forced [to] bite me by being thrown on me. This violates my rights under the constitution.

(Aff. of H. Hardin, Encl. C, at 1.) A response to Plaintiff's complaint issued on April 5, 2024, which stated:

> A review of MAXPRO footage shows that the altercation between you, inmate L. Mithcell # 1885989 and the other inmate involved was still happening w[hen] the K9 officer utilized his assigned K9 unit. A review of the body worn camera worn by the K9 officer shows the K9 officer gave you 3 direct orders to "stop fighting or the state K9 would be released" before his assigned K9 unit was utilized.

(*Id.*)

Plaintiff submitted a regular grievance based on the same facts as his written complaint, which was received by the grievance department on April 19, 2024. (Aff. of H. Hardin, Encl. D, at 1.) On his grievance form, Plaintiff stated that his "suggested remedy" was "[t]o be compensated for the K-9 officer's actions and [have] the 2/8 infractions expunged from my record." (*Id.*) Hardin rejected the grievance at intake the same day it was received, citing "insufficient information." (*Id.* at 2.) Her intake decision stated, "This incident was investigated + all policies were followed." (*Id.*) Plaintiff timely appealed Hardin's intake decision to the Regional Ombudsman, who overturned the decision and returned the grievance to Keen Mountain Correctional Center for response. (*Id.* at 2–3; Aff. of H. Hardin ¶¶ 17–18.)

On May 10, 2024, Assistant Warden of Keen Mountain Correctional Center, S.K. Owens met with Plaintiff to investigate the complaint outlined in his grievance. (Aff. of H. Hardin, Encl. D, at 5.) Owens's written summary of his complete investigation into Plaintiff's grievance stated:

> A review of MAX Pro footage and Body Worn Camera footage of the incident that occurred on 03/31/24 at 8:24 P.M. in B-4 pod shows that Inmates L. Mitchell # 1885989, S. Eley # 1047018, and L. Davis # 1063685 were engaged

5

in a physical altercation at the base of the center stairwell. Responding Canine Officer D. Casey and assigned canine arrived on the scene and immediately gave multiple orders of "State canine, stop fighting, or I will release the dog." Both inmates failed to comply with the orders given and continued actively fighting[;] therefore[,] Canine Officer Casey's canine engaged inmate Mitchell's right side of the torso. Inmate Mithcell then complied with orders and Canine Officer Casey gave commands for the canine to disengaged. All inmates involved were restrained and removed from the pod. Inmate Mitchell was checked by the KMCC medical department for any injuries received.

(*Id.*) Following his investigation, Owens made the following recommendation:

Based on the review of Operating Procedure 435.3 Canines, review of MaxPro camera footage, and Body Worn Camera footage of the incident on 03/31/24[,] Inmate L. Mitchell #1885989 was actively involved in the altercation and did not comply with commands given by Canine Officer Casey to stop fighting and therefore the canine was utilized.

In accordance with policy and procedure[,] this grievance is UNFOUNDED.

(*Id.*)

Based on the information provided by Plaintiff and Assistant Warden Owens, the Warden issued a Level I response ruling that the grievance was unfounded. (*Id.* at 4; Aff. of H. Hardin ¶ 18.) Although his grievance was eligible for Level II review, Plaintiff never appealed the Level I response to the Regional Administrator. (Aff. of H. Hardin ¶¶ 18–19; *see also* Aff. of H. Hardin, Encl. B at 2–4.)

To appeal the Level I grievance decision, Plaintiff would have needed to send his appeal form to the Western Region Ombudsman at the same address he had sent his appeal of the April 19, 2024 intake decision. (Aff. of K. Breeding ¶ 6.) The address for the Western Regional Office was also posted on the bulletin board in the inmate housing units, and Plaintiff could have asked any staff member or submitted an inmate request form if he needed to obtain the address to send his appeal. (*Id.* ¶ 7.) Alternatively, he could have sent his appeal to the Western

6

Regional Office without specifying the address by writing "bulk mail" on the envelope and either placing it into the Western Regional Office in one of the mailboxes on the "boulevard" at Keen Mountain Correctional Center or giving it to an officer during the evening mail call. (*Id.*) This "bulk mail" would have been delivered to the Western Regional Office free of charge. (*Id.*)

## II.

Summary judgment under Federal Rule of Civil Procedure 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.* (citations omitted).

In deciding a motion for summary judgment, "the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if there are genuine disputes of material fact and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen*, 55 F.4th at 959.

### III.

The Prison Litigation Reform Act of 1995 ("PLRA") requires inmates to exhaust all available remedies before filing lawsuits challenging prison conditions. *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). This requirement "gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched." *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). To adequately exhaust administrative remedies in accordance with the PLRA, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). "And given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies, even to take into account 'special circumstances' that might otherwise justify noncompliance with procedural requirements." *Moss*, 19 F.4th at 621 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)) Failure to exhaust is an affirmative defense under the PLRA. *Jones*, 549 U.S. at 216.

"[T]he only exception to the PLRA's exhaustion requirement is when an administrative remedy is not 'available.'" *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) (citing *Ross*,

578 U.S. at 642). An administrative remedy is unavailable, and thus the PLRA does not require exhaustion, if the would-be remedy is "officially on the books" but is not "capable of use to obtain relief." *Moss*, 19 F.4th at 621 (quoting *Ross*, 578 U.S. at 643). A prisoner may demonstrate that an administrative remedy is "unavailable" by showing that (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (e.g., "if administrative officials have apparent authority, but decline ever to exercise it"), (2) it is "so opaque that it becomes, practically speaking, incapable of use" (e.g., where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"), or (3) "the prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" (e.g., where "officials misl[ead] or threate[n] individual inmates so as to prevent their use of otherwise proper procedures"). *Ross*, 578 U.S. at 643–44.

Defendant argues that Plaintiff failed to properly exhaust administrative remedies in accordance with the PLRA because he did not appeal the Warden's Level I decision to Level II. (*See* ECF No. 28, at 10.) Plaintiff responds that he was denied the opportunity to file a Level II appeal because his Level I grievance response did not include an address at which to send his appeal to that response. (ECF No. 35, at 1–2.) Defendant urges that Plaintiff already possessed the correct address because he successfully appealed the initial intake decision to the Regional Ombudsman before the Level I decision issued. (ECF No. 45, at 2.) Defendant further argues that Plaintiff could have obtained the address for the Western Regional Office from the bulletin board in his housing unit, by submitting an inmate request form, or by asking a staff member. (*Id.*) Additionally, Defendant insists Plaintiff could have submitted his appeal

to the Western Regional Office without an address by labeling it as "bulk mail" and placing it in an appropriate mailbox or giving it to an officer during mail call. (*Id.*)

The court agrees with Defendant that Plaintiff's argument does not create a genuine issue of material fact as to whether he could have properly exhausted.

Notably, at the time he was to file his Level II appeal, Plaintiff had already mailed his intake-decision appeal to the Regional Ombudsman for review. The intake-decision form provided only the following instructions for appealing that decision:

> If you disagree with the intake decision, you have 5 days from the date of receipt to send an appeal of the intake decision to the Regional Ombudsman by submitting this grievance for further review.

(Aff. of H. Hardin, Encl. D, at 2.) No address was included on that form—and neither party has offered evidence indicating that Plaintiff was given any separate instructions for completing the intake-decision appeal—yet it is undisputed that Plaintiff successfully appealed the intake decision to the Regional Ombudsman.

Unfortunately, the scanned copies of the Level I response furnished by Defendant are illegible at the bottom of the form where Plaintiff would indicate his desire for an appeal.[2] (*See* Aff. of H. Hardin, Encl. D, at 4; Aff. of K. Breeding, Encl. A, at 3 [ECF No. 45-1, at 6].) However, the supplemental affidavit of former grievance coordinator K. Breeding explains that, "To appeal the Level I grievance response to Level II, Mitchell would need to send his appeal to the Western Region Ombudsman at the same address that he sent his appeal of the April 19, 2024 intake decisions." (Aff. of K. Breeding ¶ 6.) Breeding's affidavit further explains

---

[2] The few legible words appear to state, "If you are dissatisfied . . ." and presumably offer some limited instruction of how to appeal the Level I decision. (*See* Aff. of K. Breeding, Encl. A, at 3; *see also* Aff. of H. Hardin, Encl. A § IV.A ("The *Offender Grievance Response - Level I* includes a section for the offender to appeal their grievance response.").)

that Plaintiff could have sent his appeal to the Western Regional Office without an address by submitting it as "bulk mail." (*Id.* ¶ 7; *see also* Aff. of H. Hardin, Encl. A § IV.B.2(a) ("Offenders are not required to pay the cost of postage and the use of bulk mail is encouraged.").)

Nothing in Plaintiff's complaint, his sworn response in opposition to Defendant's motion for summary judgment, or his supplemental brief (ECF No. 41), suggests that he attempted to verify the correct address for appealing or that he was prevented from submitting the appeal without an address. He offers no evidence that he tried to obtain the correct address but was thwarted or that he lacked access to the resources to mail his appeal without an address. Instead, the evidence shows that Plaintiff effectively appealed the initial intake decision, despite the lack of address on the response form, and that he successfully navigated all other levels of the grievance procedure.

Based on the evidence in the record, no reasonable jury would find that the opportunity to appeal the Level I grievance response was not available to him. There are no genuine issues of material fact as to whether the grievance process at Keen Mountain Correctional Center "operate[d] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," that it was "so opaque that it bec[ame], practically speaking, incapable of use," or that prison administrators thwarted Plaintiff's attempts to appeal via "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44; *see also Green v. Doss*, No. 3:17CV574-HEH, 2020 WL 520587, at *4 (E.D. Va. Jan. 31, 2020) ("To excuse compliance with a grievance system, courts have required an inmate show that he or she was *prevented* from filing a grievance by affirmative action on the part of prison officials.")

11

(collecting cases) (emphasis added). Therefore, Plaintiff's failure to properly exhaust is not excused by the unavailability of the Level II appeal process.

Plaintiff also argues that summary judgment should be denied because his testimony concerning exhaustion conflicts with Defendant's evidence.[3] (ECF No. 35, at 2.) However, a review of Plaintiff's verified complaint reveals that Plaintiff's statements and Defendant's evidence are not actually in conflict.

In Plaintiff's complaint, he states that, initially, "the facility responded all policies were followed." (ECF No. 1, at 3.) This is consistent with Hardin's statement in her April 19, 2024 intake decision that "[t]his incident was investigated + all policies were followed." (Aff. of H. Hardin, Encl. D, at 2.). Plaintiff's complaint then states that he "appealed these decisions" and that "the Regional Ombudsman . . . overturned the facility's decisions on 5-3-2024." (ECF No. 1, at 3.) This corresponds with Defendant's evidence that the Regional Ombudsman reviewed and overturned Hardin's rejection of the grievance at intake. (*See* Aff. of H. Hardin ¶ 18.) Further, Defendant's evidence that, after the grievance was accepted, the Level I reviewer deemed the grievance unfounded (Aff. of H. Hardin, Encl. D, at 4–5) is consistent with Plaintiff's statement that, even after the Regional Ombudsman's decision, "[t]he facility still insist[s] my constitutional rights were not violated [and] all policies were followed" (ECF No. 1, at 3.)

Even though Plaintiff appealed the initial intake decision, it is not genuinely disputed that, after the grievance was returned and accepted at intake, he did not appeal the Level I

---

[3] It is unclear whether Plaintiff refers to exhaustion evidence or merits evidence. (*See* ECF No. 35, at 2.) However, because Plaintiff is proceeding *pro se* and the court liberally construes his filings, the court considers whether this argument precludes summary judgment on exhaustion grounds.

decision finding his grievance unfounded.[4] Because Plaintiff has not offered any evidence which creates a genuine dispute of material fact as to whether he properly exhausted administrative remedies before filing this suit or that those remedies were unavailable, Defendant is entitled to summary judgment.

## IV.

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 27) will be **GRANTED**. The clerk is **DIRECTED** to send a copy of this Memorandum Opinion and the accompanying Order to Plaintiff.

**ENTERED** this 30th day of March, 2026.

_____
HON. JOEL C. HOPPE
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff's own response arguing that Level II review was unavailable to him further emphasizes that the Regional Ombudsman decision referenced in his complaint was the intake-decision appeal and that Plaintiff never appealed the Level I grievance decision.